**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:26-CR-02848-SMD |
| vs. | ) | |
| | ) | |
| **BRIAN ANTHONY PORI**, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO RECONSIDER ORDER OF DETENTION AND GRANT PRE-TRIAL RELEASE**

The United States respectfully requests that the Court deny the Defendant's Motion to Reconsider Order of Detention, (Doc. 62), and asks this Court to continue to detain him pending trial as a "risk of non-appearance and find that no conditions or combination of conditions can reasonably assure his presence at trial." Doc. 57 at 9.

## I. INTRODUCTION

The Court should deny the Defendant's motion and find the Defendant presents a "risk of non-appearance and find that no conditions or combination of conditions can reasonably assure his presence at trial." Doc. 57 at 9.

## II. BACKGROUND

The new facts presented by the Defendant, such as his personal residence no longer being occupied by a tenant and probation approving a third-party custodian, does not materially influence the judgment about whether there are conditions of release that will reasonably assure that Defendant will not flee the community and appear for future court appearances. Consistent with

its previous findings, the "Defendant presents a risk of non-appearance, and no conditions or combination of conditions can reasonably assure his appearance at trial." Doc. 57. Accordingly, the United States respectfully requests this Court to deny the Defendant's motion to reconsider the Court's order of detention.

## III. DISCUSSION

The Government first sent discovery numbered 1 through 194 to the Defendant on August 3, 2026. Discovery was sent to the email address on file with the Court. The Defendant later requested the discovery be sent to additional email addresses and the Government accommodated the request. Additional discovery, pending a protective order with the Court, numbered PO195 through PO1311 was sent to the Defendant on August 28, 2026.

The Defendant filed the Motion to Reconsider Detention Order and Grant Pre-Trial Release on August 18, 2026, arguing new facts and evidence had emerged. More specifically, the Defendant's residence was no longer occupied, could serve as a suitable residence, and there was a potential third-party custodian approved by the United States Probation. Doc. 62 at 1-2.

### A. Law Regarding Pre-trial Detention

Pursuant to the Bail Reform Act, a defendant may be detained pending trial only after a hearing, held pursuant to 18 U.S.C. § 3142(f), and upon a finding "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §3142(e). At such a hearing, the United States bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness by clear and convincing evidence. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003); 18 U.S.C. § 3142(f). To determine whether there are conditions which can assure the defendant's appearance at trial and the safety of the community, the Court must consider:

(1) the nature and circumstances of the offense charged;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance a court proceedings; and
(B) whether at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by release.

*Cisneros*, 328 F.3d at 617 (*citing* 18 U.S.C. §3142(g)) (*emphasis added*).

**B. ANALYSIS**

The nature and circumstance of the offense, weight of the evidence, the history and characteristics of the Defendant all warrant the continued detention of the Defendant presents a risk of non-appearance and that no conditions or combination of conditions can reasonably assure his presence at trial.

**a. The nature and circumstances of the offense charged.**

The Government filed the Motion to Dismiss Count 3 on September 1, 2026. The focus of the hearing that occurred on July 28, 2026, was on Counts 1 and 2, 18 U.S.C. §§ 1791(a)(1) and (b)(3): Providing Contraband in Prison, as Count 3, had not yet been dismissed. The introduction of opioids to the prison population without a prescription causes serious concerns, especially when the introduction is done by someone such as the Defendant who was in a position of trust and authority. Providing contraband in prison, especially one that is a narcotic or opioid is a serious crime which "threaten[s] to cause grave harm to society." *Harmelin v. Michigan*, 501 U.S. 957, 1002 (1991) (the "possession, use, and distribution of illegal drugs represent one of the greatest problems affecting the health and welfare" of this country).

The Court noted in its Order Denying the Defendant's Motion to Amend the Detention Order that when he "was questioned about the Buprenorphine-coated legal papers, the Defendant responded by explaining that he never takes originals in, but rather makes photocopies, because he knows paperwork can be tampered with, which further illuminates Defendant's knowledge of the need to take precautions to avoid introducing contraband into the jails, and his alleged disregard for those typical precautions." Doc. 57 at 4.

**b. The weight of the evidence.**

The United States estimates that the Defendant's total offense level under the United States Sentencing Guidelines will be 26 and which will result in a guideline range of 51-63 months.

The evidence against the Defendant is strong. The Government sent discovery to the Defendant on August 3, 2026, and was requested to be sent to additional email addresses after the initial disclosure. Additional discovery on August 28, 2026.

The Defendant argues the sentencing letters he submitted on behalf of Vargas "do not show any abnormalities, they were not captured by the scan" and "there are no 'dark like coffee or tea' marks on the pages, which would almost certainly bleed through the paper to the other side." Doc. 62 at 3. The Government would argue that a scanned copy of a copy will not always show what a report says is on there and that not all stains "bleed through" regardless of how dark the substance is. The lab report describes as it as an "off-white/yellow" substance (FBI Lab Report Dated February 2, 2026) and not as the "dark like coffee or tea marks" as described by the Defendant." Doc. 62 at 3. The abnormalities that are described in the reports are uncommon abnormalities and are abnormalities which are better to seen in person. The fact that he cannot see them on a copy does not mean they are not real.

The Court noted in its Order, "when he was questioned about the Buprenorphine-coated legal papers, Defendant responded by explaining that he never takes originals in, but rather makes photocopies, because he knows paperwork can be tampered with, which further illuminates Defendant's knowledge of the need to take precautions to avoid introducing contraband into the jails, and his alleged disregard for those typical precautions." Doc. 57 at 4. The Government agrees with the Court the Defendant's knowledge of knowing what precautions to take to avoid introducing contraband, his years of experience of representing clients and knowing what controlled substances and undoubtedly, what Suboxone would look like in a multitude of forms, along with his own past experience of substance abuse places him in a unique position. This unique position would also endow him with knowledge far beyond the average person and rather than use that knowledge for good of stopping the substance from entering prison, he used his knowledge to exploit the system and bring it in.

The Defendant argues "the mail field tested negative for any narcotics by the facility." Dock. 62 at 2. However, this is not uncommon for uncommon narcotics or opiates to yield a negative result because they are uncommon and require further testing in a lab setting. Field tests are frequently limited to the most used opioids, narcotics, or methamphetamines used. The Defendant overlooks discovery such as the documents from communication in December 2025 were sent to the general chemistry lab division of the Federal Bureau of Investigation that:

**Results of Examinations:**

Item 4 consisted of sixteen individual pages of printed documents that were packaged in contact with Item 5, which was a nineteen-page document stapled together. The net weight of the Item 4 and Item 5 pages was 165.9 grams ± 0.7 grams (99.7% confidence level).

Several of the Item 4 pages were observed to be mostly covered on one side with a film of off-white/yellow substance. The Item 5 pages did not have any readily visible staining. Two of the stained Item 4 pages were sampled and analyzed as representative of the Item 4 and Item 5 documents, since these documents were packaged together. Buprenorphine was identified on the portions of the Item 4 pages that were sampled and analyzed.

Item 4 and Item 5 were visually examined and weighed. Item 4 was further examined by the following techniques: direct analysis in real time/time-of-flight mass spectrometry, gas chromatography/mass spectrometry, and infrared spectroscopy.

Items 2 and 3 were visually examined. No chemical analyses were conducted on these items.

**Interpretations/Limitations:**

The above chemical analysis results are limited to the portions of Item 4 that were sampled and analyzed.

**Remarks:**

Buprenorphine is a Schedule III controlled substance.

*See* excerpt FBI Laboratory Report dated February 2, 2026.

The Defendant argues there is no implicit or explicit connection to him, to his address, or to his phone number. The Defendant argues the reference of "the attorney" does not implicitly or explicitly identify him, his knowledge, or his involvement in this conspiracy. The Defendant also argues the reference of "uncle," does not identify him implicitly or explicitly. The Defendant overlooks the totality of circumstances and in viewing the evidence as a whole. Instead, the Defendant is attempting to cherry pick from the discovery he currently has and argue that it is insufficient and therefore, he should be released.

This Court noted in its Order denying release, "the Defendant's admission that he sent the intercepted mail, that he knows paperwork can be tampered with, and so he only sends copies to detained clients, indicates not only his involvement but also his awareness of the issue with contraband going into jails, and steps he has taken in the past to prevent this very issue." Doc. 57

at 5. The Court also noted that "it is difficult to image that 266 strips of Suboxone inserted in the lining of soft, sleeve-style glasses case would not feel anomalous to the touch." *Id. See images below.*








**c. History and characteristics of the Defendant.**

The Defendant is a United States Citizen with a home that seems to be in question. The Defendant owns a residence in Albuquerque, New Mexico and yet freely told Pre-Trial Services that his home address was in Ciudad de Mexico, Mexico and he had lived there since March 26, 2026. This address in Ciudad de Mexico, Mexico is the home address that was listed on the Pre-Trial Services report as his home address and not the residence in Albuquerque, New Mexico. This was a conscious choice made by the Defendant to say that address was his home and not the residence in Albuquerque, New Mexico.

As this Court noted in its Order Denying release and the PTS, the Defendant has no real ties to the District of New Mexico given his self-admission to winding down his legal practice, retirement, enrolling in school in Mexico to study Spanish, and lack of family and "strong relational ties" to the community. Docs. 12 at 2 and 57 at 6.

The Government shares the same concern this Court has "that Defendant is a seasoned international traveler, who is familiar with the ease with which a United States citizen can walk across the border into Mexico, with or without a passport." Doc. 57 at 8. The Government has concerns as to his statements to Mexican officials when they were unable to locate a return flight from Mexico to the United States and he was denied entry and he the immigration officials, "I am just going to book another flight to come down to Mexico the next day."

The Defendant's decision, on no less than two occasions, to misuse his position of authority and privilege as legal counsel and bring controlled substances into the prison, displays a fundamental lack of respect for the law, the criminal behavior of his clients and the safety of other inmates and jail personnel. The Defendant repeatedly mentions that he practiced law for decades in New Mexico. While this is true, the Defendant's decisions to violate the law and abuse his position of authority has led the New Mexico Supreme Court to summarily suspend him from the practice of law as of June 5, 2026. *See, In The Matter of Brian A Pori*, Esq, New Mexico Supreme Court Order NO, &-1-SC-41336. The Court cannot fashion conditions, which fundamentally are mere words on paper, that will control a person who has chosen to violate his oath to uphold the law. The Defendant's past service to the legal community does not immunize him from the consequences of his criminal behavior.

Given the significant amount of incarceration, the sentencing range of 51 to 63 months, facing the Defendant and the strength of the case against him, he has no incentive to abide by conditions of release or appear for before the Court.

## IV. CONCLUSION

**WHEREFORE**, the United States respectfully requests that the Court find the Defendant is still a flight risk and that no conditions can reasonably assure the Defendant's future appearance in Court, and order that the Defendant continue to be detained pending the resolution of this case.

Respectfully submitted,

TODD BLANCHE
Attorney General
RYAN ELLISON
First Assistant United States Attorney

***Filed Electronically***
TANISHA V. HENSON
JAMES A. DICKENS
Assistant U.S. Attorney
200 N. Church Street
Las Cruces, New Mexico 88001
(575) 522-2304

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification to defense counsel of record.

***Electronically Filed September 1, 2026***
TANISHA V. HENSON
JAMES A. DICKENS
Assistant U.S. Attorney